STEVENS COUNTY POWER & LIGHT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13962.   Promulgated May 25, 1928.

*Eustace LeMaster, C. P. A.*, for the petitioner.
*G. S. Borden, Esq.*, for the respondent.

LITTLETON: The questions involved are (1) whether petitioner is entitled to include in its invested capital for the years 1920 and 1921 the actual cash value, if any, of the lease acquired in exchange for stock in August of 1908 and (2) whether it is entitled to deduct aliquot parts of the fair market value or price at March 1, 1913, if any, of such lease from its gross income for each of the respective taxable years.

The Commissioner contends (1) that by reason of the several successive amendments and mergers by which the original lease was converted into the leasehold acquired at April 28, 1915, petitioner did not own in the taxable years the property which it acquired for stock in 1908; (2) that exhaustion, if any, should be based on the value and governed by the terms of the leasehold acquired in 1915; and (3) that even if his first two contentions fail, the leasehold had no value at August, 1908, or at March 1, 1913, for invested capital or exhaustion purposes.

We find it unnecessary to pass on the correctness of the first two contentions advanced by the Commissioner for the reason that even if it should be held that the petitioner is correct in principle in claiming for invested capital purposes the cash value of the leasehold when paid in for stock in 1908, and for exhaustion purposes, the fair market value of the leasehold which it held on March 1, 1913, we should be unable to grant the relief asked by petitioner since the evidence submitted is insufficient to establish the appropriate value on either date.

At the outset it should be observed that when the original lease was acquired in 1903, no bonus or consideration other than the covenants contained therein was given for the same, and that this was likewise true with respect to the subsequent modifications, mergers or new leases obtained. In all cases the unit price of $5 per horsepower remained unchanged. No evidence was submitted to show that the rentals paid under the terms of the leases were less than would have been paid had it been necessary to negotiate new leases at the basic valuation dates claimed or that the negotiations under which the rentals were fixed were other than arm's length transactions. The record contains no evidence of sales of stock of the petitioner or of similar water-power sites and rights at or about the dates involved, nor do we have evidence as to the earnings of the petitioner and amount of horsepower developed on which the unit rental price was paid.

What the petitioner relies upon as proof of value is the testimony of two of its officers and two other witnesses. Neither of the officers qualified as expert witnesses with respect to valuations of the character here in question nor did they furnish any basis for the opinions expressed that the leasehold had a value of $100,000. One of them testified that he had made no investigation as to the value of the property in question, nor did he have knowledge that an investigation had been made. The other officer who owned the leasehold prior to 1908 merely stated that in his opinion the leasehold had a value of $100,000 to him at the time he sold it. Obviously, such testimony is of little or no assistance in arriving at a fair valuation.

While the first expert witness, Logan, appeared to be fully qualified to express an opinion as to the valuations in question, it was very apparent that the character of the valuation which he had in mind was something different from the cash value of the leasehold when paid in in 1908, or the fair market price or value on March 1, 1913, as contemplated by the governing revenue act. The following statements made by him on cross-examination will illustrate the character of the valuation which he made:

Q. Now, what, in your opinion, is the definition of fair market value?

   *        *        *        *        *        *        *

THE WITNESS: In answer to that question I would like to bring out the difference in the two definitions between fair market value and fair value. The market value of any property results from the use to which it is put, and varies with the profitableness of that use, present and prospective, actual and anticipated. That is, I believe the accepted definition of market value.

BY MR. BORDEN:

Q. Of fair market value?

A. Of fair market value.

Q. That is, in your opinion, the definition of fair market value?

A. Yes, sir, as distinguished from fair value, which is measured by its profitableness, present and prospective, actual and anticipated as in the other case, under fair rates.

Q. In stating your opinion of fair market value you derived that opinion so as to comply with the definition of fair market value which you have just given?

A. Yes, sir.

Q. That definition which you have just given is not necessarily the price at which a willing buyer would buy and a willing seller would sell?

A. Absolutely not, as there is no relation between fair value and cost.

Q. So your opinion has entirely disregarded the question of price at which a willing buyer would buy and a willing seller would sell in a sale which was not under compulsion?

A. That is the definition, of course, for the fair market value, and I have considered that the value for any purpose, whether it is for taxation, rate purposes, or for any other purpose, must be the same and has no bearing upon the cost.

Q. It is true, isn't it, your definition is somewhat analogous to a value in use, the present value in use.

A. It is.

Q. So that this value in use which you have determined would practically be the same in 1903 as it would be in 1913, or any time during that interval?

A. Yes.

On redirect examination this witness testified as follows:

Q. Mr. Borden has given you a definition of fair market value which he stated was that price which a willing purchaser would be willing to pay and a willing seller would be willing to accept, a sale without compulsion. I will state that just a little bit differently and say considering the definition of fair market value as follows: It is that price which a willing purchaser willing but not obligated to buy would pay to a willing seller willing but not obligated to sell; had that definition been given to you as fair market value would your answers have been just the same as to the value of the leasehold in question in August, 1908 and March 1st, 1913?

A. It would not.

Q. What values would you give to that definition?

A. I have not arrived at any value for that definition.

Q. Is there any way you could arrive at a value following that definition, Mr. Logan, from the data in your possession and the study you have made of the water-power sites?

A. I think so.

Q. How long would it take you to make that calculation?

A. I would have to give it some thought.

The second expert witness, Butler, testified that the factors considered by him in making the valuations were largely the same as those used by the previous witness, and on direct examination made the following statements:

Q. Mr. Butler, taking into consideration the definition of fair market value as follows: It is that price which a willing purchaser willing but not obligated to purchase is willing to pay and a willing seller willing but not obligated to sell, what in your opinion is the fair market value or fair cash value at the date of August, 1908 of this lease, more particularly described as Petitioner's Exhibits "2" and "3" which are the leases of January 12th, 1903 and June 26, 1903?

*      *      *      *      *      *      *

A. Why, I have not taken into consideration that definition for the value of the water right.

Q. Mr. Butler, would the value of a water right as defined be any different from any other value you might put on it?

A. The difference is this, a water right has value in my opinion because it is of a potential service to the public. If there was not a possibility of service to the public from this water right then it would not have value.

His further testimony, both on direct examination and on cross-examination, indicated that he had in mind something in the nature of an inherent potential value in use, rather than a value at which it could reasonably have been expected that the property could have

been sold on the market or the value at which it would have been taken in exchange for other goods or property.

In view of the character of the evidence and the lack of other evidence which might form the basis for the necessary valuations, the Board is of the opinion that the petitioner has failed to establish the cash value of the leasehold paid in for stock in 1908, or the fair market price or value of the leasehold which it owned on March 1, 1913.

Reviewed by the Board.

*Judgment will be entered for the respondent.*